# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION AT LAFAYETTE

CHARLES M. RILEY,        )
        Plaintiff,     )
                          )
    v.                        )     CAUSE NO.: 4:14-CV-63-JD-PRC
                          )
BOARD OF COMMISSIONERS OF   )
TIPPECANOE COUNTY, et al.,     )
        Defendants.    )

## FINDINGS, REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE PURSUANT TO
## 28 U.S.C. § 636(b)(1)(B) & (C)

This matter is before the Court on a Motion to Dismiss [DE 5], filed by Defendants John Knochel, Thomas Murtaugh, David Byers, Sheriff Tracy Brown, Scott Hodson, the Board of Commissioners of Tippecanoe County, and the Tippecanoe County Sheriff's Department on September 25, 2014.

On October 28, 2014, District Court Judge Jon E. DeGuilio entered an Order [DE 10] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant motion pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).

## PROCEDURAL BACKGROUND

On September 3, 2014, Plaintiff Charles M. Riley filed a Complaint against Defendants the Board of Commissioners of Tippecanoe County; John Knochel, Thomas Murtaugh, and David Byers, in their official capacities as Commissioners of Tippecanoe County; the Tippecanoe County Sheriff's Department; Tracy Brown, in his official capacity as Sheriff of Tippecanoe County; Lieutenant Scott Hodson, individually and in his official capacity as an Officer of the Tippecanoe

County Sheriff's Department; and Deputy Jane Doe, individually and in her official capacity as an officer of the Tippecanoe County Sheriff's Department.

In the Complaint, Mr. Riley makes the following factual allegations. Mr. Riley is a disabled American veteran who suffers from service-related post traumatic stress disorder ("PTSD"). As a result of his PTSD, Mr. Riley is subject to seizures and loss of balance leading to falls. To deal with the effects of PTSD, Mr. Riley requires the assistance of his service dog, Bella, for balance support, mobility, and calming during episodes of PTSD. On July 14, 2014, Mr. Riley went to the Tippecanoe County Courthouse in Lafayette, Indiana, to deliver papers in connection with a criminal matter in which Mr. Riley was the alleged victim. Upon entering the courthouse, Mr. Riley was stopped by Officer Jane Doe at the public entrance. Officer Doe informed Mr. Riley that Bella could not enter the courthouse because only service dogs providing services to individuals with vision or hearing disabilities were allowed to enter the courthouse and that "emotional support animals" were not permitted. When Mr. Riley attempted to explain that Bella was not an "emotional support animal" but rather a service dog under the Americans with Disabilities Act, Officer Doe called over her supervisor, Officer Scott Hodson. Officer Hodson reiterated that Bella could not accompany Mr. Riley into the courthouse. Tippecanoe County Sheriff's Department security personnel told Mr. Riley that he could not leave Bella tied outside the courthouse while transacting his business. As a result, Mr. Riley was unable to conduct his business, which resulted in a financial loss, as well as stress, anxiety, and emotional distress.

Mr. Riley's Complaint contains six counts. Count One alleges a violation of the Americans with Disabilities Act ("ADA") against the Board of Commissioners of Tippecanoe County ("Board") through the acts of Officers Hodson and Doe who are alleged to be agents of the Board. Mr. Riley

alleges that he had a right under the ADA to be accompanied by Bella while doing business in the courthouse.

Count Two alleges a violation of the Rehabilitation Act by the Board through the actions of Officers Hodson and Doe as agents of the Board. Mr. Riley alleges that he is an otherwise qualified individual with a disability and that Officers Hodson and Doe discriminated against him solely on the basis of his disability in violation of the Rehabilitation Act.

Count Three alleges a violation of the ADA by the Tippecanoe County Sheriff's Department ("Sheriff's Department") on the basis that Mr. Riley had a right under the ADA to be accompanied by Bella while doing business in the courthouse and that the actions of Officers Hodson and Doe, agents of the Sheriff's Department, violated the ADA.

Count Four is a claim under the Rehabilitation Act against the Tippecanoe County Sheriff's Department for discrimination by Officers Hodson and Doe, who are alleged to be agents of the Sheriff's Department, solely on the basis of Mr. Riley's disability.

Count Five is brought under 42 U.S.C. § 1983. Mr. Riley alleges that Officers Hodson and Doe deprived him of his statutorily protected rights under the ADA to be accompanied by his service dog Bella while conducting business in the courthouse. He further alleges that the Officers deprived him of his constitutionally protected right to equal protection of the law under the Fourteenth Amendment to the United States Constitution.

In Count Six, Mr. Riley alleges municipal liability under 42 U.S.C. § 1983 for violations of the ADA and the equal protection guarantees of the Fourteenth Amendment, alleging that at the time Officers Hodson and Doe prevented Mr. Riley from entering the courthouse with Bella, the Officers were acting pursuant to a policy, practice, or custom of the Board and/or the Sheriff's Department.

In the prayer for relief, Mr. Riley requests that the Court issue a permanent injunction prohibiting the Board, the Sheriff's Department, and their agents from denying entry to service dogs in violation of the ADA and/or the Rehabilitation Act. Mr. Riley also seeks reimbursement for the financial loss he suffered as a result of the violations; compensatory damages to make him whole for the stress, anxiety, and emotional distress caused by the violations of the ADA and/or the Rehabilitation Act; and punitive damages against Defendants Hodson and Doe to deter further violations of the ADA and/or the Rehabilitation Act.

On September 25, 2014, Defendants filed the instant Motion to Dismiss and a memorandum in support. Mr. Riley filed a response on October 5, 2014, and Defendants filed a reply on October 9, 2014.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on such a motion, the Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1082 (7th Cir. 2008).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must first comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Second, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570); *see also Tamayo*, 526 F.3d at 1082. The Supreme Court explained that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotation marks and brackets omitted); *see also Iqbal*, 556 U.S. at 678-79; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Determining whether a complaint states a plausible claim for relief requires the Court to draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679.

## ANALYSIS

In the Motion to Dismiss, Defendants contend that the individual Commissioners, the Tippecanoe County Sheriff's Department, and Jane Doe are not appropriate defendants for the claims in the Complaint, that Officer Hodson is not an appropriate defendant under the ADA and the Rehabilitation Act, and that punitive damages are not available under the ADA and the Rehabilitation Act. Defendants also argue that Mr. Riley has failed to state a claim under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the ADA, and the Rehabilitation Act. Finally, Defendants contend that Mr. Riley lacks standing to bring a claim for injunctive relief. The Court considers each argument in turn.

### A. Proper Defendants

*1.     Individual Commissioners*

Commissioners John Knochel, Thomas Murtaugh, and David Byers have been sued only in their official capacities as Commissioners of Tippecanoe County. Mr. Riley agrees with Defendants that there is no basis for suing them in their official capacities in addition to the Board itself.

Accordingly, the Court recommends that the Motion to Dismiss be granted as to the individual Commissioners and that Defendants Knochel, Murtaugh, and Byers be dismissed with prejudice. *See Wilson v. Civil Town of Clayton, Ind.*, 839 F.3d 375, 383 (7th Cir. 1988) ("To the extent that the Commissioners are sued in their official capacities, the action operates as a claim against the County itself.") (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).

2.      *Tippecanoe County Sheriff's Department*

Mr. Riley brings this lawsuit against both the Tippecanoe County Sheriff's Department ("Sheriff's Department") and Tracy Brown in his official capacity as Sheriff of Tippecanoe County. Counts Three (ADA), Four (Rehabilitation Act), and Six (§ 1983) are brought against the Sheriff's Department but do not make any allegations against Sheriff Brown. In their motion, Defendants argue that the Sheriff's Department is not an entity subject to suit and that it is sufficient that the Sheriff has been sued in his official capacity.[1] Plaintiff disagrees, responding that the Sheriff's Department is the proper entity and that dismissal of Sheriff Brown is proper instead. This is a dispute without a substantive effect on this lawsuit as the parties are essentially arguing about the naming of the municipal entity that is being sued–whether the entity should be named for the sheriff's department or for the sheriff. *See Burton v. Lacy*, No. 1:07-CV-918, 2008 WL 187552, at *5 (S.D. Ind. Jan. 18, 2008) (concluding that "it makes no difference whether the named party is the

---

[1] Notably, Defendants do *not* argue that the county rather than the sheriff's department is the proper entity; they argue only that the sheriff rather than the sheriff's department is the proper defendant. *See Burton v. Lacy*, No. 1:07-CV-918, 2008 WL 187552, at *4-5 (S.D. Ind. Jan. 18, 2008) (summarizing the conflicting case law with respect to whether the sheriff's department or the county is the proper defendant and concluding that the county is not the proper defendant); *see also Hodge v. Cnty. of Delaware*, No. 1:09-CV-519, 2009 WL 3415131, at *3 (S.D. Ind. Oct. 16, 2009) (rejecting the position that the county was the proper defendant and analyzing the § 1983 claim against the sheriff in his official capacity) (citing *Delk v. Bd of Com'rs of Delaware Cnty.*, 503 N.E.2d 436, 440 (Ind. Ct. App. 1987)).

'Sheriff's Department,' the 'Office of the Sheriff,' or the 'Sheriff in his Official Capacity'" because "[s]uing an officer in his or her official capacity is no different than suing the municipal entity").

Because the suit against the Tippecanoe County Sheriff's Department and Sheriff Brown in his official capacity are one and the same and because no claim is brought against Sheriff Brown in his individual capacity, in the interests of clarity, Sheriff Brown rather than the Tippecanoe County Sheriff's Department should be dismissed. Thus, the Court recommends granting this portion of the Motion to Dismiss with relief different than requested by Defendants and dismissing the Complaint against Sheriff Brown in his official capacity while the claims against the Tippecanoe County Sheriff's Department remain pending.

*3.     Officer Doe Defendant*

Defendants argue that naming a "Jane Doe" defendant is merely a placeholder and serves no purpose. However, the case cited by Defendants, *Kennington v. Carter*, recognizes that the Federal Rules of Civil Procedure neither condemn nor condone the practice of bringing suit against an unnamed or 'John Doe' defendant and that while the Seventh Circuit Court of Appeals generally disfavors the practice, district courts have discretion as to whether such claims may be sustained. 216 F. Supp. 2d 856, 858 (S.D. Ind. 2002). There is no harm in allowing the claim to remain against Jane Doe. Moreover, this argument is largely academic given that, in the following section, the Court recommends dismissal of the counts brought against the individual Officers, including Officer Doe.

4.    *Claims Against the Individual Officers and Request for Punitive Damages against the Individual Officers Under the ADA and the Rehabilitation Act*

a.    Section 1983 and the ADA

Count Five of the Complaint is brought against Officers Hodson and Doe for the alleged deprivation of Mr. Riley's rights under 42 U.S.C. § 1983. Mr. Riley alleges that the Officers deprived him of both his right to equal protection of the law under the Fourteenth Amendment to the United States Constitution as well as his "statutorily-protected right under the ADA to be accompanied by Bella, his service dog, while conducting business in the Courthouse." (Compl. ¶¶ 48, 49).

In their motion, Defendants assume that Count Five is brought under Title II of the ADA and move for dismissal on the basis that the individual officers are not proper defendants because they are not a "public entity." In his response brief, Mr. Riley clarifies that Count Five against the individual Officers is not brought under Title II of the ADA, agreeing that the individual Officers are not proper defendants under Title II, but rather is brought solely under § 1983. Mr. Riley further explains that Count Five alleges that the Officers "deprived Riley of statutorily-secured rights to which he was entitled by the ADA." (Pl. Resp. 5). Herein lies the rub. While Mr. Riley is correct that the ADA does not foreclose private claims brought under § 1983 for alleged constitutional violations by individual defendants (such as Mr. Riley's Fourteenth Amendment equal protection claim against the Officers), § 1983 may *not* be used as a vehicle to allege violations of the ADA against the individual defendants because the ADA includes its own comprehensive enforcement measures. *See Baumgardner v. Cnty. of Cook*, 108 F. Supp. 2d 1041, 1048-50 (N.D. Ill. 2000);[2] *see*

---

[2] Mr. Riley cites *Baumgardner* in his brief for its holding that a plaintiff is not precluded from bringing an ADA claim against one party and a § 1983 claim against an individual defendant. *See* (Pl. Resp. 5). In this case, Defendants are not arguing that Mr. Riley is foreclosed from bringing both a § 1983 claim against the individual Officers based on

*also Alexander v. Chi. Park Dist.*, 773 F.2d 850, 856 (7th Cir. 1984) ("Generally, where a statute provides its own comprehensive enforcement scheme, that scheme may not be bypassed by pleading an underlying violation of the statute and bringing suit directly under § 1983.") (citing *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981); *Smith v. Robinson*, 468 U.S. 992 (1984); *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)).

Accordingly, the Court recommends granting the Motion to Dismiss as to the § 1983 claim in Count Five that asserts a claim against Officers Hodson and Doe for depriving Mr. Riley of his rights under the ADA. *See* (Compl. ¶ 48). For the same reasons, the Court also recommends granting the Motion to Dismiss the § 1983 *Monell* claim brought in Count Six based on the alleged deprivation of rights secured by the ADA and the Rehabilitation Act. *See* (Compl. ¶ 56).

As for Mr. Riley's remaining § 1983 claims in Counts Five and Six based on alleged violations of the Fourteenth Amendment's Equal Protection Clause, *see* (Compl. ¶¶ 49, 57), the Court addresses the viability of those claims in Section B.1 below.

b.      Punitive Damages

Because the individual Officers are not proper defendants for Mr. Riley's ADA and Rehabilitation Act claims, the Court recommends granting the Motion to Dismiss as to the request made in paragraph 62 of the Complaint for punitive damages against Officers Hodson and Doe for violations of the ADA and/or the Rehabilitation Act. Moreover, punitive damages are not available in private suits under the ADA and the Rehabilitation Act. *See Barnes v. Gorman*, 536 U.S. 181, 184-85, 189 (2002) (holding that, "[b]ecause punitive damages may not be awarded in private suits

---

the violation of a constitutional right as well as claims against the entities under the ADA; rather, Defendants argue correctly that § 1983 cannot be used to enforce the statutory rights conferred under the ADA against the individual defendants.

brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits

brought under § 202 of the ADA and § 504 of the Rehabilitation Act").

## B. Failure to State a Claim

Defendants argue that Mr. Riley has failed to state a claim upon which relief can be granted

under the Equal Protection Clause, the ADA, and the Rehabilitation Act. The Court considers each

claim in turn.

*1.      Equal Protection Clause*

a.      Count Five: § 1983 Claims Against Officers Hodson and Doe for Violations of the Equal
         Protection Clause of the Fourteenth Amendment

To state a claim for relief under § 1983, a plaintiff must allege (1) the deprivation of a right

secured by the Constitution or laws of the United States (2) caused by a person acting under the

color of state law. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing

*Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)). In Count Five, Mr. Riley

alleges that, by excluding his service dog Bella from the Tippecanoe County Courthouse, Officers

Hodson and Doe deprived him of his right to equal protection under the Fourteenth Amendment to

the United States Constitution. Mr. Riley alleges generally that the individual Officers' actions were

intentional, willful, and in reckless disregard of Mr. Riley's rights.

To prevail on his equal protection claim, Mr. Riley must prove that the Officers "(1) 'treated

him differently from others who were similarly situated, (2) intentionally treated him differently

because of his membership in the class to which he belonged (i.e., [individuals with disabilities], and

(3) because [individuals with disabilities] do not enjoy any heightened protection under the

Constitution, . . . that the discriminatory intent was not rationally related to a legitimate state

interest.'" *Illinois League of Advocates for the Developmentally, Disabled v. Quinn*, No. 13 C 1300,

2014 WL 3605633, at *20 (N.D. Ill. July 21, 2014) (internal citations omitted) (quoting *Schroeder v. Hamilton Sch. Dist.*, 282 F.3d 946, 950-51 (7th Cir. 2002); citing *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 442 (1985); *Anderson v. Cornejo*, 284 F. Supp. 2d 1008, 1037-38 (N.D. Ill. 2003); citing also *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367-68 (2001) (confirming that the holding in *Cleburne* applies to individuals with disabilities such that state action is subject to rational basis review only)); *see Schindler v. Univ. of Ill. at Chi. Legal Council*, No. 08 C 6703, 2009 WL 2601267, at *4 (N.D. Ill. Aug. 20, 2009) (recognizing *Cleburne*'s holding that "persons with disabilities are neither a suspect nor a quasi-suspect class, and as such, any claim of an Equal Protection violation premised upon disability is only subject to a rational basis standard of review").

Defendants argue that the substantive allegations of the Complaint indicate that the cause of Bella's exclusion from the courthouse was a dispute over whether the dog was an emotional support animal and that, if the Officers had believed the dog to be a service animal as opposed to an emotional support animal, they would have allowed the dog in the courthouse. Defendants point to the allegations in paragraphs 14 and 15 of the Complaint:

> 14. Doe informed Riley that Bella could not enter the Courthouse with Riley because only service dogs providing services to individuals with vision or hearing disabilities were allowed to enter the Courthouse, and that "Emotional Support Animals" ("ESA") are not.

> 15. When Riley attempted to explain to Doe that Bella was not an ESA, but was, in fact, a *service dog* as defined in the ADA, Doe asked her superior, Hodson, to come over.

(Compl. ¶¶ 14, 15). Defendants argue that the Complaint does not support an inference that the Officers discriminated against Mr. Riley either intentionally or through deliberate indifference because of his disability.

Mr. Riley counters that Defendants have mischaracterized his Complaint as focusing on whether Bella was a service dog or an emotional support animal when in fact the alleged discriminatory act is Officer Doe's initial focus on the nature of Mr. Riley's disability as not a vision or hearing disability. Mr. Riley argues that, because his disability was obviously not vision- or hearing-related, it did not matter whether Bella was a service dog or an emotional support animal; the Officers were not going to allow Bella in the building.

However, Mr. Riley bases this distinction solely on the requirements of the ADA and does not allege in his Complaint or argue in his response brief that he was treated differently because of his status as a disabled person or any other basis under the Equal Protection Clause of the Fourteenth Amendment. Instead, Mr. Riley's arguments in his response brief in support of his equal protection claim rest *solely* on an analysis of the ADA regulations governing the requirement that public entities permit the use of a service animal by an individual with a disability and an assertion that the individual Officers were deliberately indifferent to Mr. Riley's rights under the ADA. *See* (Pl. Br. pp. 8-12).[3] Again, as set forth above in Section A.4.a, § 1983 cannot be used as a vehicle to enforce the ADA against individuals when no cause of action against those individuals is available under the ADA itself. Thus, as to Mr. Riley's assertion that the individual Officers violated 28 C.F.R. § 35.136 regarding the scope of inquiry regarding whether an animal constitutes a service animal, *see* (Pl. Br. P. 9), the Officers are not proper defendants for the ADA claims, and the ADA claims cannot be the basis for the § 1983 claims against the Officers.

---

[3] Tellingly, in arguing that he has stated a claim for a Fourteenth Amendment equal protection violation, Mr. Riley writes, "The Defendants also argue that Mr. Riley 'must . . . show that the defendants treated him differently because he was disabled, and, because the disabled do not enjoy heightened protection under the Constitution, that the discriminatory intent was not rationally related to a legitimate state interest.' *With respect, the Defendants are subtly but significantly misstating the language of the ADA.*" (Pl. Resp. 10) (emphasis added) (citation omitted). Again, the ADA cannot be the basis for the § 1983 equal protection claim. *See Baumgardner v. Cnty. of Cook*, 108 F. Supp. 2d 1041, 1048-50 (N.D. Ill. 2000).

Moreover, the alleged facts suggest that Mr. Riley was treated the same as a non-disabled person who would not have been permitted to bring a dog into the courthouse. Thus, to the extent that the Officers treated Mr. Riley differently than they would have treated a non-disabled individual, there is no basis alleged, much less argued, for inferring that the difference was based on an intent to discriminate because of Mr. Riley's disability. Because the allegations in the Complaint do not support an inference that the individual Officers treated him differently from others who were similarly situated, Mr. Riley's § 1983 equal protection claim against the Officers fails.

The Court recommends that the Fourteenth Amendment equal protection claim brought under § 1983 against Officers Hodson and Doe in Count Five be dismissed. Because Count Five is the only Count brought against Officers Hodson and Doe, and because the Court has already recommended dismissal of the § 1983 claim based on the ADA, dismissal of this remaining basis for Count Five would result in the dismissal of Count Five as well as the dismissal of both Officers Hodson and Doe from the suit.

b.      Count Six: Municipal Liability Under § 1983

Mr. Riley's § 1983 municipal liability claim in Count Six should also be dismissed. Based on the same actions of Officers Hodson and Doe, Mr. Riley alleges municipal liability against the Board of Commissioners and/or the Sheriff's Department on the basis that the Officers' actions were pursuant to a policy, practice, or custom of depriving disabled individuals of their right to be accompanied by service dogs while conducting business in the courthouse.

"*Monell* permits suits against municipal entities under § 1983, but only when a governmental policy or custom caused the constitutional deprivation; municipal entities cannot be liable for their

employees' actions under a respondeat superior theory." *Hahn v. Walsh*, 762 F.3d 617, 638-39 (7th Cir. 2014). However, "the question of whether there existed a policy or custom is distinct from the question of whether the plaintiff presents a cognizable constitutional injury." *King v. Kramer*, 763 F.3d 635, 649 (7th Cir. 2014). As set forth in the previous section, Mr. Riley has failed to allege that he was deprived of his constitutional right to equal protection. Moreover, the Complaint does not support an inference that the Sheriff's Department or the Board had a policy to deprive individuals with a disability of their rights to be accompanied by a service dogs while conducting business in the courthouse. Accordingly, the Court recommends dismissal of the claim for municipal liability for the alleged Fourteenth Amendment equal protection claim brought under § 1983 (Count Six). Because the Court has already recommended dismissal of the § 1983 claim based on the ADA, dismissal of the equal protection claim would result in the dismissal of Count Six in its entirety.

2.     *Counts One Through Four: Claims Brought Under the ADA and the Rehabilitation Act*

In Counts One and Two, Mr. Riley alleges violations of the ADA and the Rehabilitation Act, respectively, by the Board based on the actions of Officers Hodson and Doe as agents of the Board. Similarly, Counts Three and Four allege violations of the ADA and the Rehabilitation Act, respectively, by the Sheriff's Department, based on the Officers' refusal to allow Mr. Riley's service dog Bella to enter the courthouse with him.

Both Section 202 of the ADA and Section 504 of the Rehabilitation Act prohibit discrimination against individuals with disabilities. *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014). The Rehabilitation Act provides, in relevant part, that "[n]o otherwise qualified individual with a disability in the United States . . . shall, *solely by reason of her or his disability*, be excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (emphasis added). The ADA similarly provides that "no qualified individual with a disability shall, *by reason of such disability*, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added). Mr. Riley's claims under both Acts are substantively the same and should be analyzed under the same criteria. *Gratzl v. Offices of Chief Judges of 12th, 18th, 19th, and 22nd Judicial Circuits*, 601 F.3d 674, 678 n. 2 (7th Cir. 2010) (citing *Ozlowski v. Henderson*, 237 F.3d 837, 839 (7th Cir. 2001)); *Washington v. Ind. High School Athletic Ass'n*, 181 F.3d 840, 845 n. 6 (7th Cir. 1999) ("The chief difference between the two statutes is that the Rehabilitation Act applies only to entities receiving federal funding, while Title II of the ADA contains no such limitation. Another difference is that the Rehabilitation Act requires that the exclusion be *solely* by reason of disability, while the ADA requires only that the exclusion be by reason of the disability.").

Defendants seek dismissal of Mr. Riley's ADA and Rehabilitation Act claims on the basis that Mr. Riley has not pled facts sufficient to show that Bella is a service dog and to show that he was the target of intentional discrimination.

First, Defendants argue that Mr. Riley cannot prevail on his claim because he has not alleged facts that permit an inference that Bella is a "service dog" within the meaning of 28 C.F.R. § 35.136 (titled "Service Animals") and, more particularly, 28 C.F.R. § 35.104, which defines a "service animal as:

> any *dog* that is *individually trained* to do work or perform tasks for the benefit of an individual with a disability, including a *physical, sensory, psychiatric, intellectual, or other mental disability*. Other species of animals, whether wild or domestic, trained or untrained, are not service animals for the purposes of this definition. The

work or tasks performed by a service animal must be directly related to the individual's disability. Examples of work or tasks include, but are not limited to, assisting individuals who are blind or have low vision with navigation and other tasks, alerting individuals who are deaf or hard of hearing to the presence of people or sounds, providing non-violent protection or rescue work, pulling a wheelchair, *assisting an individual during a seizure*, alerting individuals to the presence of allergens, retrieving items such as medicine or the telephone, *providing physical support and assistance with balance and stability to individuals with mobility disabilities*, and *helping persons with psychiatric and neurological disabilities by preventing or interrupting impulsive or destructive behaviors*. The crime deterrent effects of an animal's presence and the provision of emotional support, well-being, comfort, or companionship do not constitute work or tasks for the purposes of this definition.

28 C.F.R. § 35.104 (emphasis added).

In his Complaint, Mr. Riley alleges that he is a disabled American veteran who suffers from service-connected PTSD, that his PTSD makes him susceptible to seizures that cause him to lose his balance and fall, and that he requires Bella's assistance to deal with the effects of his PTSD. The Complaint alleges that Mr. Riley requires the dog's assistance to "deal with the effects of PTSD, including balance support, mobility, and calming." (Compl. ¶ 11). As to these allegations, the Court finds that Mr. Riley has pled sufficient facts to establish that Bella provides the types of tasks related to his disability contemplated by the regulations.

However, Mr. Riley's allegation that Bella is "a service dog as defined in the ADA," (Compl. ¶ 15), is nothing more than a legal conclusion; Mr. Riley has not alleged that Bella was "individually trained" to do the identified tasks for Mr. Riley. This deficiency can easily be cured with the proper factual allegations in an amended complaint. Accordingly, the Court recommends that the Motion to Dismiss Counts One through Four be granted without prejudice and with leave for Mr. Riley to file an Amended Complaint containing allegations as to Bella's training.

As a second basis for dismissal of these counts, Defendants argue that Mr. Riley has failed to allege facts sufficient to support an inference of intentional discrimination, which is required to recover compensatory damages under both statutes. *See Kennington v. Carter*, No. IP01-0648, 2004 WL 2137652, at *7 (S.D. Ind. June 28, 2004) ("Proof of intentional discrimination is necessary before a plaintiff may recover compensatory damages under Title II of the ADA.") (citing 42 U.S.C. § 12133 (ADA); 29 U.S.C. § 794a(2) (Rehabilitation Act); *Alexander v. Sandoval*, 532 U.S. 275, 280-81 (2001)). The Seventh Circuit Court of Appeals has not yet decided whether discriminatory animus or deliberate indifference is required to show intentional discrimination. *Strominger v. Brock*, No. 14-1310, 2014 WL 5840513, at *3 (7th Cir. Nov. 12, 2014) (comparing *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262-63 (3d Cir. 2013) (deliberate indifference), with *CarmonaRivera v. Puerto Rico*, 464 F.3d 14, 18 (1st Cir. 2006) (discriminatory animus)). Under the deliberate indifference standard, "[i]ntentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir.1999). That is, "a plaintiff must show knowledge (i.e. notice that an accommodation is required) and deliberate conduct (as opposed to mere negligence)." *S.B. ex rel W.B. v. Hamos*, No. 12-CV-3077, 2012 WL 4740291, at *7 (C.D. Ill. Oct. 3, 2012) (citing *Kennington*, 2004 WL 2137652, at *7). Under both the deliberate indifference and discriminatory animus standards, mere negligence is insufficient. *Strominger*, 2014 WL 5840513, at *3.

Defendants argue that the Complaint fails to state a claim against the Board or the Sheriff's Department because, at most, the Complaint alleges a factual dispute in July 2014 between Mr. Riley and the Officers as to whether Bella was an emotional support animal or a service animal.

Defendants argue that, because emotional support animals are not covered under the ADA, the fact that the Officers excluded Bella because they believed her to be an emotional support animal would not state a claim for compensatory damages under the ADA or the Rehabilitation Act.

However, Mr. Riley has alleged that the Officers refused to allow Bella to enter the courthouse either because they believed that Mr. Riley did not require Bella's assistance because of a visual or auditory impairment or because they believed Bella was an emotional support animal. Thus, a reasonable person could infer from the Officers' failure to make the proper inquiries and refusal to consider Mr. Riley's explanation that they were deliberately indifferent to Mr. Riley's rights under the ADA and the Rehabilitation Act. The Complaint alleges that the Officers' actions were intentional. Thus, Mr. Riley has alleged both knowledge by the Officers of the requirements regarding service animals and deliberate conduct. Together, these are not the sort of conclusory allegations that are insufficient under *Iqbal*, in contrast with the allegations in *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885-86 (7th Cir. 2012), cited by Defendants in their reply brief.

At this stage of the litigation, Mr. Riley has sufficiently alleged intentional discrimination to survive the Motion to Dismiss his ADA and Rehabilitation Act claims in Counts One through Four, and it is premature to decide whether Mr. Riley will be able to prove intentional discrimination. Whether Mr. Riley can present sufficient evidence to support an award of damages is not at issue on the present motion. Accordingly, the Court recommends that the Motion to Dismiss Counts One through Four on this basis be denied.

### C. Injunctive Relief

Finally, Defendants seek dismissal of Mr. Riley's request for injunctive relief for a lack of standing. Although not cited by Defendants, this standing argument is properly brought under Rule

12(b)(1) for a lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009).

Article III, § 2 of the United States Constitution limits the jurisdiction of the federal courts to actual cases and controversies. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) ("[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.") (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976))). "One element of the case-or-controversy requirement" is that a plaintiff, "based on the [his] complaint, must establish that [he] have standing to sue." *Raines*, 521 U.S. at 818; *see also Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Thus, a plaintiff must allege an injury that is "'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1147 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, —, 130 S.Ct. 2743, 2752 (2010)). When a plaintiff seeks prospective injunctive relief, the plaintiff "must allege a 'real and immediate' threat of future violations of their rights." *Scherr*, 703 F.3d at 1073 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)); *see also Schirmer v. Nagode*, 621 F.3d 581, 585 (7th Cir. 2010). Thus, the "threatened injury must be *certainly impending* to constitute injury in fact" and "[a]llegations of *possible* future injury are not sufficient." *Clapper*, 133 S.Ct. at 1147 (internal quotation marks and citations omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Defendants argue that Mr. Riley's Complaint does not state a plausible likelihood that he will be subjected to future injury by reason of the policies or procedures at the Tippecanoe County

Courthouse. They contend that he has stated no need to return to the courthouse and any such allegation would have to be more than speculative and go beyond the general likelihood that any citizen has of being required to go to the courthouse. *See Means v. St. Joseph Cnty. Bd. of Comm'rs*, No. 3:10-CV-3, 2011 WL 4361567, at \*4-5 (N.D. Ind. Sept. 16, 2011).

The Court agrees. There are no allegations in the Complaint that Mr. Riley intends to return to the Tippecanoe County Courthouse and that he has not done so because of the likelihood that Bella will be excluded. *See Scherr*, 703 F.3d at 1074 ("[A] plaintiff must allege past injury under the ADA; show that it is reasonable to infer from [his] complaint that this discriminatory treatment will continue; and show that it is also reasonable to infer, based on the past frequency of [his] visits and the proximity of [the courthouse] to [his] home, that [he] intends to return to [the courthouse] in the future.") (internal quotation marks omitted) (quoting *Carmarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008)). There are no allegations in the Complaint that Mr. Riley ever visited the courthouse prior to July 2014 or that he has any reason to visit the courthouse in the future. Nor does Mr. Riley argue in his response brief that he had previously visited the courthouse, that he has any intent to visit the courthouse in the future, or even that he feels deterred from visiting the courthouse in the future.

Instead, Mr. Riley's response focuses solely on the fact of his *past* injury and exclusion from the courthouse: "Riley *was*, in fact, '*deterred* from visiting or patronizing' the courthouse." (Pl. Resp. 6). This is insufficient. "It is not enough that a plaintiff allege that he has suffered past wrong at the hands of the defendant: '[p]ast exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present, adverse effects.'" *Means*, 2011 WL 4361567, at \*3, \*4-5 (quoting *Lyons*, 461 U.S. at 104 (quoting *O'Shea*

*v. Littleton*, 414 U.S. 488, 495 (1974))). Thus, the Court recommends that the Motion to Dismiss be granted as to Mr. Riley's request for injunctive relief. *See* (Compl. ¶ 59).

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the District Court **GRANT in part** and **DENY in part** the Motion to Dismiss [DE 5] and that the Court:

(1) **DISMISS with prejudice** Defendants John Knochel, Thomas Murtaugh, and David Byers, sued in their official capacities as Commissioners of Tippecanoe County;

(2) **DISMISS with prejudice** Defendant Tracy Brown, in his official capacity as Sheriff of Tippecanoe County;

(3) **DISMISS with prejudice** Count Five (§ 1983 claims against Officers Hodson and Doe),which would result in the dismissal of Defendants Lt. Scott Hodson and Deputy Jane Doe in their individual and official capacities;[4]

(4) **DISMISS with prejudice** Count Six (municipal liability under § 1983);

(5) **DISMISS with prejudice** the request for punitive damages against Officers Hodson and Doe under the ADA and the Rehabilitation Act (Paragraph 62);

(6) **DISMISS with prejudice** the request for injunctive relief (Paragraph 59);

(7) **DISMISS without prejudice** the ADA and Rehabilitation Act claims in Counts One through Four brought against Defendants Board of Commissioners of Tippecanoe County and the Tippecanoe County Sheriff's Department **with leave to refile**, if appropriate, an Amended Complaint consistent with this Order that includes allegations regarding Bella's training.

---

[4] Although both Lt. Scott Hodson and Deputy Jane Doe were sued both individually and in their official capacities as officers of the Tippecanoe County Sheriff's Department, the official capacity claims are coextensive with the claims against the Sheriff's Department and, thus, dismissal of both Hodson and Doe in both their individual and official capacities is proper.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

SO ORDERED this 7th day of January, 2015.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record