UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| CHARLES M. RILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14-CV-063-JD |
| | ) | |
| BOARD OF COMMISSIONERS OF | ) | |
| TIPPECANOE COUNTY, and | ) | |
| | ) | |
| THE TIPPECANOE COUNTY SHERIFF'S | ) | |
| DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Charles Riley ("Plaintiff") claims that two Tippecanoe Sherriff's Department deputies

barred him from entering the Tippecanoe County Courthouse with his alleged service dog in

violation of the Americans With Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq.*, and

the Rehabilitation Act, 29 U.S.C. § 794(a). Plaintiff initially asserted these claims (among others)

in a September 3, 2014, complaint, but the Court dismissed them, finding that Plaintiff had not

adequately alleged that his dog was a service animal, which foreclosed his claims. [DE 12]

Plaintiff then filed an amended complaint on June 15, 2015. [DE 14] As with the first complaint,

Defendants moved to dismiss, this time unsuccessfully. [DE 20]

Now before the Court is Defendants' Motion for Summary Judgment. [DE 35] The

motion has been fully briefed by the parties and is ripe for review. Also before the Court is

Defendants' Motion to Strike a portion of Plaintiff's affidavit submitted in support of his

opposition to the Motion for Summary Judgment. [DE 44] Plaintiff never responded to the

Motion to Strike, and the permissible time in which to do so has long passed.

For the reasons stated herein, the Court will grant Defendants' Motion for Summary Judgment and subsequently deny the Motion to Strike as moot.[1]

## STANDARD OF REVIEW

On summary judgment, the moving party bears the burden of demonstrating that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co*., 391 U.S. 253, 289 (1968)). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp*., 166 F.3d 887, 890 (7th Cir. 1999).

## FACTUAL BACKGROUND

The record before the Court is thin. On or about July 14, 2014, Plaintiff went to the Tippecanoe County Courthouse to deliver a victim impact statement in connection with a criminal matter in which he was the victim. [DE 42-1 ¶ 12] Plaintiff brought with him his purported service dog, Bella, and sought to enter the courthouse with her. [DE 35-1 ¶ 4] Bella

---

[1] As such, the Court will decline to address the parties' arguments on whether Plaintiff may recover compensatory damages.

was wearing a vest that was labeled with "NSAR Service Animal Certified."[2] *Id.* ¶ 4, Exh. 2. Plaintiff received this vest when he registered Bella as an Emotional Support Animal ("ESA") with the NSAR. *Id.* ¶¶ 10-11. There is some disagreement as to who said what next, but suffice it to say that while he was attempting to enter the courthouse with Bella, Plaintiff produced a photo identification card for her that listed her service type as "ESA." *Id.* ¶¶ 5-6, Exh. 1. In relevant part, the back of the card states:

> ESAs are animals that are necessary for the normal, day-to-day functioning of their emotionally or psychologically disabled handler, facilitating a normalizing effect by their presence. They do not require specific training.
>
> An ESA is not a working service dog under the Americans with disabilities [sic] Act of 1990 and is not granted unlimited access.

*Id.* at Exh. 1. Based on the card provided by Plaintiff, he was not permitted to enter the courthouse with his dog.[3] *Id.* ¶ 7.

---

[2] "NSAR" refers to the National Service Animal Registry.

[3] In opposition to the Motion for Summary Judgment, Plaintiff attacks the manner in which one of the deputies questioned him when he attempted to bring Bella into the courthouse. [DE 41 at 9-11] The Court finds little merit or relevance in this argument. First, based on Plaintiff's interpretation of the pertinent regulations, it was unlawful for the deputy to ask Mr. Riley "is that a service animal" rather than asking "if the animal is required because of a disability," and for her to ask "what is the service" rather than asking "what work or task the animal has been trained to perform." *See id.* These are the same questions worded inconsequentially differently.

  Second, Plaintiff contends that, had he not been compelled to show identification for Bella, then the deputies would never have found out that she was only registered as an ESA. But, even though the parties dispute whether this actually happened, it makes no difference. Plaintiff argues that, had the deputy instead asked him the "right" question – whether Bella was required because of a disability – his "answer would likely have been, 'Yes.'" [DE 41 at 10] However, as discussed herein, Plaintiff has failed to provide evidence that would create an issue of fact as to whether Bella was a service animal under the ADA when the courthouse incident occurred. If Plaintiff cannot currently provide sufficient evidence to demonstrate that Bella was a service dog on July 14, 2014, then what other information could he have truthfully told the deputies that day that would have allowed him to bring her into the courthouse? The only disability under the ADA put forth by Plaintiff is his service-connected PTSD, which, as the record indicates, is not linked to any of his mobility or balance issues. Therefore, at most, Plaintiff could have truthfully told the officers that he needed Bella to calm him down during episodes of PTSD, but as discussed herein, that does not make Bella a service animal under the ADA.

Plaintiff is an Army combat veteran who served in Operation Desert Storm. [DE 42-1 ¶ 1] According to Plaintiff, he was diagnosed with post-traumatic stress disorder ("PTSD") in 1991 by a Dr. Kolbecker at the VA Illiana Medical Center in Danville, Illinois. *Id.* Plaintiff's PTSD causes him to become agitated and experience anxiety in unfamiliar, tense, or stressful settings. *Id.* Despite additionally citing problems with his mobility and balance, *id.* ¶ 2, the only *disability* Plaintiff claims to suffer from is PTSD [DE 42-2 at 2], and there is no evidence in the record to support the allegation that his mobility and balance issues are in any way related to his PTSD. Plaintiff maintains that he was "classified as permanently and totally disabled due to his service-connected disabilities" in November 2014, several months after the incident at the courthouse. [DE 42-1 ¶ 1]

Plaintiff's medical records indicate that he was treated on occasion for major depressive disorder, mood disorder, family circumstances, and relational problems between June 2013 and March 2015. [DE 35-4] None of the medical records provided state that Plaintiff was either diagnosed with or treated for PTSD during that time, although those records do not necessarily exclude such a diagnosis. *Id.* However, a letter signed by Plaintiff's psychiatrist, while post-dating the courthouse incident by more than a year, states that Plaintiff "*has been* receiving treatment at the VA since 1998," has been seeing this particular psychiatrist since June 2012, and "*continues* to struggle with PTSD symptoms." [DE 42-4] (emphasis added).

Plaintiff acquired Bella in 2011 and had her enrolled in and complete "general private training" at PetSmart in August 2013, but there are no details in the record as to what that training entailed. [DE 42-1 ¶ 8; 35-4 at 3] Plaintiff then registered Bella as an ESA in early September 2013 [DE 35-1, Exh. 1], and personally began to train her to complete certain tasks. *Id.* ¶ 9. Specifically, Plaintiff trained Bella to: let him know when his clothes dryer had finished

its cycle; open and close doors; pull groceries home from the store; alert him when someone was at the door; turn lights on and off; provide balance support and mobility assistance; help him regain his footing if he fell; get help if required; and calm him during his PTSD episodes. [DE 42-1 ¶ 9; 35-4 at 12] Plaintiff maintains that Bella was fully trained to perform these tasks by July 14, 2014.[4] *Id.*

It is against the backdrop of these facts that the Court conducts its analysis.

## DISCUSSION

Plaintiff alleges in Counts I-IV that The Board of Commissioners of Tippecanoe County and the Tippecanoe County Sheriff's Department each committed violations of the ADA and the Rehabilitation Act by prohibiting Plaintiff from entering the courthouse with Bella. [DE 14 ¶¶ 25-54] Stemming from these allegations, Plaintiff requests reimbursement for the financial losses he suffered as a proximate result of not being able to provide his victim impact testimony, compensatory damages, and injunctive relief prohibiting Defendants and their agents from banning service dogs from the courthouse in violation of the ADA and Rehabilitation Act.[5] For the reasons discussed below, the Court will grant Defendants' motion for summary judgment on these claims.

## I. The ADA and the Rehabilitation Act

The ADA is a comprehensive civil rights law enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with

---

[4] The record also indicates that, at least at later points in time, Bella knew how to push Plaintiff in a wheelchair and could help him safely cross the street. [DE 35-4 at 16; 42-6]

[5] Plaintiff concedes that his claim for injunctive relief is moot and the Court will treat it as such. [DE 41 at 8 n. 4]

disabilities." 42 U.S.C. § 1201(b)(1). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

The standards under the ADA and the Rehabilitation Acts are the same, and so, in discussing whether the record supports summary judgment as to Plaintiff's ADA claims, the Court will be addressing his Rehabilitation Act claims as well. *Gratzl v. Office of Chief Judges of 12th, 18th, 19th, & 22nd Judicial Circuits*, 601 F.3d 674, 678 n.2 (7th Cir. 2010) (citing *Ozlowski v. Henderson*, 237 F.3d 837, 839 (7th Cir.2001)).[6]

To bring a claim under Title II of the ADA, a plaintiff must establish that: (1) he or she is a qualified individual who has a disability as defined by the statute; (2) he or she was excluded from a benefit provided by the public entity; and (3) the exclusion was "by reason of" the disability. *Brown v. Dist. 299—Chicago Pub. Schs.*, 762 F. Supp. 2d 1076, 1083-84 (N.D. Ill. 2010) (citing *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004) and 42 U.S.C. § 12132). While genuine issues of material fact remain as to whether Plaintiff suffered from PTSD

---

[6] "We have held previously that the standards applicable to one act are applicable to the other. Title II of the ADA was modeled after § 504 of the Rehabilitation Act; the elements of claims under the two provisions are nearly identical, and precedent under one statute typically applies to the other. *See Grzan v. Charter Hosp. of Northwest Indiana*, 104 F.3d 116, 123 (7th Cir. 1997); *see also McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459-60 (6th Cir. 1997) (en banc); *Crowder v. Kitagawa*, 81 F.3d 1480, 1483 (9th Cir. 1996) (noting that § 12133 of the ADA, 42 U.S.C. § 12133, requires that "[t]he remedies, procedures, and rights set forth in the [Rehabilitation Act] shall be the remedies, procedures, and rights" applicable to section 12132 discrimination claims) (internal quotations omitted). The chief difference between the two statutes is that the Rehabilitation Act applies only to entities receiving federal funding, while Title II of the ADA contains no such limitation. Another difference is that the Rehabilitation Act requires that the exclusion be solely by reason of disability, while the ADA requires only that the exclusion be by reason of the disability." *Washington v. Indiana High Sch. Athletic Ass'n*, Inc., 181 F.3d 840, 845 (7th Cir. 1999).

at the time of the courthouse incident, the record does not contain sufficient evidence to demonstrate that Bella was a service animal at that time within the meaning of the ADA.

### A. A reasonable factfinder could determine that Plaintiff was a qualified individual with a disability.

One is "disabled" under the ADA if he or she has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment. 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g); *see also Carothers v. County of Cook*, 808 F.3d 1140, 1147 (7th Cir. 2015). The ADA defines "major life activities" as including, but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

As stated above, the only disability Plaintiff claims to suffer from is PTSD. [DE 42-2 at 2] Defendants argue that Plaintiff has not provided enough evidence to demonstrate that he suffered from PTSD on July 14, 2014. To support their position, Defendants note that none of the medical records provided pre-dating the incident list Plaintiff as being diagnosed with or treated for PTSD. However, while each of these records fail to include PTSD among the "DIAGNOSES AND PROBLEMS TREATED *THIS VISIT*," they do not *exclude* the existence of an underlying PTSD diagnosis. [DE 35-4 at 7-8, 11; 42-3 at 2] (emphasis added). At the same time, the Court has been presented with Plaintiff's sworn statement that he was diagnosed with PTSD in 1991 by Dr. Kolbecker at the VA Medical Center in Danville, Illinois. [DE 42-1 ¶ 1] And, the letter from Dr. Afolabi, while dated well after the courthouse incident, reads retrospectively in nature about Plaintiff's ongoing struggles with PTSD. [DE 42-4] Without

explaining when Plaintiff began suffering from PTSD, the letter leaves open a genuine issue of material fact as to whether he was disabled on July 14, 2014.[7]

Defendants also contend that the record lacks any evidence indicating that Plaintiff's PTSD substantially limits a major life activity. However, the phrase "substantially limits" "is not meant to be a demanding standard" and determining "whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." 29 C.F.R. §§ 1630.2(j)(1)(i), (iii). Additionally, the "term 'substantially limits' shall be construed broadly and in favor of expansive coverage[.]" *Id.* § 1630.2(j)(1)(i). PTSD itself is an impairment that will "virtually always be found to impose a substantial limitation on a major life activity." *Id.* § 1630.2(j)(3)(ii). Indeed, "it should easily be concluded that the following types of impairments will, at a minimum, substantially limit the major life activities indicated: … post-traumatic stress disorder … substantially limit[s] brain function." *Id.* § 1630.2(j)(3)(iii).

With these regulations in mind, the Court turns to whether Plaintiff's PTSD substantially limits a major life activity. The pertinent statutory language includes cognitive functions within the definition of "major life activities," such as concentrating, thinking, and communicating. *See* 42 U.S.C. § 12102(2)(A). Among other things, Dr. Afolabi's letter indicates that Plaintiff struggled with concentration due to his PTSD. [DE 42-4] The record contains no explanation of *how* Plaintiff's PTSD affects his "major life activities" as defined in the statute, apart from this letter and a single reference to an example of Plaintiff experiencing anxiety under stress. [DE 42-1 ¶ 2] However, when considering the breadth afforded to PTSD as a disability, a reasonable factfinder could determine that Plaintiff's PTSD impacts his major life activities. *See* 29 C.F.R. §

---

[7] Defendants make an alternative argument as to whether Plaintiff's major depressive disorder diagnosis satisfies the first prong of his ADA claim [DE 36 at 17-18], but given the Court's PTSD determination, this possibility need not be explored.

1630.2(j)(1)(iii) ("The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity.").

Overall, a reasonable factfinder could determine that Plaintiff was a qualified individual with a disability under the ADA when he attempted to enter the courthouse with Bella.

### B.    Bella was not a service animal under the ADA on July 14, 2014.

Despite the existence of genuine issues of material fact as to Plaintiff's PTSD diagnosis, Plaintiff cannot demonstrate that Bella was a service animal within the meaning of the ADA based on the evidence contained in the record. For this reason, his claims will fail.

An individual can show he or she was excluded from a benefit provided by a public entity if that entity refused to provide a reasonable accommodation. *Brown*, 762 F. Supp. 2d at 1083-84; *see also Wisc. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006) (accord). Here, Plaintiff alleges that Defendants discriminated against him within the meaning of the ADA by refusing to allow the presence of Bella in the courthouse as an accommodation of his disability – PTSD. *See* 28 C.F.R. § 36.302(c)(7). As this Court has previously stated, Plaintiff must therefore prove, as a prerequisite to his claim, that Bella is actually a service animal under the ADA "since the regulations which implement the ADA and the [Rehabilitation Act] only protect the right to take service animals – as opposed to, e.g., untrained or emotional support animals – into public facilities." [DE 20 at 2] (citing 28 C.F.R. § 35.136(g)); *see also, e.g.*, *Cordoves v. Miami-Dade Cty.*, 92 F. Supp. 3d 1221, 1230 (S.D. Fla. 2015); *Davis v. Ma*, 848 F. Supp. 2d 1105, 1114 (C.D. Cal. 2012), *aff'd*, 568 F. App'x 488 (9th Cir. 2014); *Miller v. Ladd*, No. CV-08-05595-NJV, 2010 WL 2867808, at *4 (N.D. Cal. July 20, 2010); *Vaughn v. Rent-A-*

*Center, Inc*., No. 2:06-cv-1027, 2009 WL 723166, at *10 (S.D. Ohio Mar. 16, 2009). The ADA

defines "service animal" as:

> [A]ny dog that is individually trained to do work or perform tasks for the benefit
> of an individual with a disability, including a physical, sensory, psychiatric,
> intellectual, or other mental disability . . . The work or tasks performed by a
> service animal must be directly related to the individual's disability. Examples of
> work or tasks include, but are not limited to . . . assisting an individual during a
> seizure . . . providing physical support and assistance with balance and stability to
> individuals with mobility disabilities, and helping persons with psychiatric and
> neurological disabilities by preventing or interrupting impulsive or destructive
> behaviors. The crime deterrent effects of an animal's presence and the provision
> of emotional support, wellbeing, comfort, or companionship do not constitute
> work or tasks for the purposes of this definition.

28 C.F.R. § 35.104.

The bar for demonstrating a genuine issue of fact regarding a dog's status as a service

animal is not a high one. *Cordoves*, 92 F. Supp. 3d at 1230. To survive a motion for summary

judgment on the training issue, Plaintiff need only produce testimony as opposed to documented

evidence of training. *See Baugher v. City of Ellensburg, WA*, No. CV-06-3026-RHW, 2007 WL

858627, at *5 (E.D. Wash. Mar. 19, 2007). Nor is it necessary to show the dog was trained by a

"certified trainer." *Green v. Hous. Auth. of Clackamas Cnty*., 994 F. Supp. 1253, 1256 (D. Or.

1998). In fact, a service dog may simply be individually trained at home. *See Vaughn*, 2009 WL

723166, at *10; *Green*, 994 F. Supp. at 1256. Further, "[t]here are no requirements as to the

amount or type of training that a service animal must undergo, nor the type of work or assistance

that a service animal must provide, but the animal must be trained to perform tasks or do work

for the benefit of a disabled individual." *Rose v. Springfield-Greene Cnty. Health Dep't*, 668 F.

Supp. 2d 1206, 1214-15 (W.D. Mo. 2009); *accord Green*, 994 F. Supp. at 1256; *Vaughn*, 2009

WL 723166, at *10. "This is not a taxing requirement, … and there are no federally-mandated

animal training standards." *Prindable v. Ass'n of Apartment Owners of 2987 Kalakaua*, 304 F.

Supp. 2d 1245, 1256 (D. Haw. 2003) (alteration added; citation omitted), *aff'd sub nom. Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175 (9th Cir. 2006).

Nonetheless, "courts have granted summary judgment if a plaintiff cannot show with any specificity a genuine issue of fact regarding a dog's training or status as a service animal." *Cordoves*, 92 F. Supp. 3d at 1230-31. To survive summary judgment on the training issue, a plaintiff needs to demonstrate that the animal was trained to perform tasks that directly relate to his or her disability. 28 C.F.R. § 35.104; *see also Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995) (holding in a Fair Housing Amendments Act case that deaf tenants were not entitled to dog as a reasonable accommodation where the dog was not necessary as a hearing dog); *Davis*, 848 F. Supp. 2d at 1114-15 (citing *Bronk* and holding that plaintiff must show dog was trained to work to ameliorate the disability at hand). Here, Plaintiff suffers from PTSD. According to the record, Plaintiff's PTSD causes him to "become agitated, and experience feelings of anxiety in unfamiliar, tense, or stressful situations." [DE 42-1 ¶ 2] It follows, then, that Plaintiff must demonstrate he trained Bella to perform specific tasks to ameliorate the anxiety and agitation he experiences in certain settings due to his PTSD. No such showing is present. Rather, there are essentially three categories of tasks that Bella knew how to perform as of July 14, 2014: (1) assistance with daily living; (2) assistance with mobility and balance; and (3) "calming" Plaintiff during episodes of PTSD.

As to the first category, the record indicates that Bella knows how to alert Plaintiff when someone is at his door, pull his groceries home from the store, turn lights on and off, alert Plaintiff when his clothes dryer has completed its cycle, and open and close doors. [DE 42-1 ¶ 9; 35-4 at 12] But, none of these tasks pertain to Plaintiff's PTSD and thus do not add to his argument that Bella was a service dog when he attempted to enter the courthouse. *See Rose*, 668

F. Supp. 2d at 1215-16 (monkey who assisted with day-to-day activities – retrieving plaintiff's toothbrush or television remote – was not a service animal where plaintiff provided no explanation of why her alleged anxiety order required the animal to perform these tasks); *Pruett v. Arizona*, 606 F. Supp. 2d 1065 (D. Ariz. 2009) (chimpanzee did not qualify as a service animal because the household tasks it performed – retrieving candy, beverages, remote controls, and the telephone, and turning lights on and off – did not relate to plaintiff's diabetic disability).

Bella also assists Plaintiff with his mobility and balance issues. For example, Bella can provide him with general "balance support and mobility assistance," help him regain his feet after a fall, and get help when required. [DE 42-1 ¶ 9] Bella can also push Plaintiff in a wheelchair and help him safely cross the street. [DE 35-4 at 16; 42-6] But again, according to Plaintiff's own statements and written discovery responses, the *only* disability at issue in this case for ADA purposes is Plaintiff's service-connected PTSD. [DE 42-1; 42-2 at 2] Although he alleges in his amended complaint that his PTSD makes him subject to seizures, loss of balance, and mobility issues [DE 14 ¶¶ 8-9], the record does not support any such link between Plaintiff's PTSD and these other health concerns.[8] As such, Bella's ability to help Plaintiff with his balance and mobility does no more to qualify her as a service animal under the ADA than does her ability to assist with daily activities, because without a connection between Plaintiff's disability – PTSD – and his ambulatory problems, the tasks that Bella has been trained to perform do not relate to the disability at hand. *See* 28 C.F.R. § 35.104; *see also Davis*, 848 F. Supp. 2d at 1115-16 (dog did not qualify as a service animal in absence of evidence linking plaintiff's degenerative back disability to reliance on dog for mobility support); *cf. Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015) (miniature horse that provided support to young girl qualified as a service animal

---

[8] Plaintiff attests to being prone to falling and to having mobility and balance issues [DE 42-1 ¶ 2], but he does not maintain in his affidavit that those problems are bi-products or symptoms of his PTSD.

where evidence showed that her multiple disabilities affected her ability to walk and balance independently).

Lastly, Plaintiff maintains that Bella calms him during episodes of PTSD. [DE 42-1¶ 9] Unfortunately, having a calming effect on an individual, without more, does not render any animal a service animal under the ADA. 28 C.F.R. § 35.104 ("[T]he provision of emotional support, wellbeing, comfort, or companionship do not constitute work or tasks for the purposes of this definition."); *Lerma v. California Exposition and State Fair Police*, 2:12-cv-1363, 2014 WL 28810, at *5 ( E.D. Cal. Jan. 2, 2014) (finding that dog's provision of emotional support and comfort did not qualify as work or tasks under the ADA's definition of service animal); *Rose*, 668 F. Supp. 2d at 1215 (finding that monkey's provision of comfort to plaintiff did not qualify it as a service animal).

Moreover, even if Bella's calming effect could qualify her as a service animal, there is nothing in the record to suggest that she underwent any training, whether individually administered by Plaintiff or otherwise, that taught her specific tasks and functions to help Plaintiff cope with the anxiety associated with his PTSD. The only reference to Bella's calming effect in the record, that she calmed Plaintiff down when he nearly got into a fight at a concert, is merely anecdotal in nature and predates any of Bella's training.[9] *See Prindable*, 304 F. Supp. 2d at 1257 ("[S]light anecdotal evidence" is insufficient to detail a purported service animal's training.). Thus, without evidence specifying what techniques Bella was trained to perform and *how* she would use such techniques to calm Plaintiff during his PTSD episodes, the record does not demonstrate that she even learned any additional calming skills from her training. *See*

---

[9] Plaintiff recounted the concert anecdote to a social worker at the VA on July 15, 2013 [DE 35-4 at 12], but he did not enroll Bella in general training at PetSmart until August of that year, and only began to train Bella individually after she completed that general course. [DE 42-1 ¶¶ 8-9]

*Baugher* 2007 WL 858627, at *5 (granting summary judgment where nothing in the record explained what specifically plaintiff's dog did to cue plaintiff or *how* the dog was trained to provide these cues); *Rose* 668 F. Supp. 2d at 1215 (granting summary judgment even where plaintiff described a task her monkey performed that was related to her disability but provided no explanation as to the monkey's training or its specific cues); *cf. Cordoves,* 92 F. Supp. 3d at 1231 (sufficient evidence existed to qualify dog as a service animal where it: detected PTSD-related panic attacks; alerted plaintiff using various techniques; minimized and alleviated panic attacks by lowering her heart rate via those techniques; and impacted the frequency with which the attacks occurred).

The burden on Plaintiff to demonstrate that his dog is a service animal under the ADA is not a heavy one. But the Court has searched the record and finds nothing that would lead a reasonable jury to conclude that Bella was a trained service animal, as opposed to an emotional support animal, at the time of the courthouse incident. Plaintiff therefore cannot meet this prerequisite showing, and his claims must fail.

## CONCLUSION

The Court is mindful of and grateful for Plaintiff's military service, and acknowledges the sacrifices he and his fellow servicemen and servicewomen have given in defense of this country. All too often, American veterans return home burdened with a host of disabilities – both visible and invisible – that will accompany them for the rest of their lives. In Plaintiff's case, and in the cases of many others, he exposed himself to combat so that others might not have to, and as a result bears the unseen wounds of post-traumatic stress disorder.

However, in bringing the instant case, Plaintiff must demonstrate that his dog, Bella, was a service animal within the meaning of the ADA when he attempted to enter the courthouse in

July 2014. Based on the record before the Court, he cannot do so, and it is therefore **ORDERED** that Defendants' Motion for Summary Judgment [DE 35] be **GRANTED**. It is further **ORDERED** that Defendants' Motion to Strike [DE 44] be **DENIED** as moot. As this order disposes of all of Plaintiff's claims, the Clerk is **DIRECTED** to enter judgment.

       SO ORDERED.

       ENTERED:  September 21, 2017


                              _____/s/ JON E. DEGUILIO_____
                              Judge
                              United States District Court